**Antonio MANRIQUE, Appellant,**

v.

**The STATE of Texas.**

**Nos. 589–97, 834–97.**

Court of Criminal Appeals of Texas, En banc.

May 19, 1999.

---

Jay Brandon, San Antonio, for appellant.

Jeffrey L. Van Horn, Assist. State's Att., Matthew Paul, State's Atty., Austin, for the State.

## OPINION

WOMACK, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, HOLLAND, and KEASLER, JJ., joined.

The issue is whether Antonio Manrique has been punished twice for the same of-

fense. We hold as a matter of state law that he has not.

The grand jury presented two indictments against Manrique. Each indictment had one count comprising two paragraphs.[1] In the first indictment Paragraph A alleged the attempted murder of a person and persons unknown to the grand jurors by shooting at them with a deadly weapon;[2] Paragraph B alleged the attempted murder of Edward Avilez by shooting at him with a deadly weapon. In the second indictment Paragraph A alleged the attempted murder of a person and persons unknown to the grand jurors by shooting at them with a deadly weapon; Paragraph B alleged the attempted murder of Donnie Avilez by shooting at her with a deadly weapon. The indictments were consolidated for trial before a jury.

The jury heard evidence that the appellant and David Samudio showed up at a party with a rifle. Samudio said that they were going to "light up" (that is, shoot up) the house of a member of a rival gang, and they left the party. They returned tired and out of breath. The appellant told someone that he and Samudio had shot at a yellow house on a certain street nearby, that he had started the shooting, and that after the gun jammed Samudio had taken the gun and shot some more. The yellow house was riddled by bullets. It was occupied by several members of the Avilez family, including Edward and his wife Donnie, who both were shot. At the scene police recovered 26 shell casings which matched a rifle that was found behind a couch in the appellant's home.

The court's charge instructed the jury to find the appellant guilty on the first indictment if they found he had committed attempted murder on a person or persons unknown to the grand jury or Edward Avilez, and to find the appellant guilty on

1. See Tex.Code Crim. Pro. art. 21.24(b): "A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense."

2. See Tex.Code Crim. Pro. art. 21.07: "When the name of [a] person is unknown to the grand jury, that fact shall be stated ...."

the second indictment if they found he had committed attempted murder on a person or persons unknown to the grand jury or Donnie Avilez. The jury returned a general form of verdict on each indictment which found the appellant "guilty of attempted murder as charged in the indictment," without specifying which paragraph they found to be true.

The jury later assessed punishments of 20 years' confinement on each indictment. Two judgments were entered, with sentences to be served concurrently as required by law.[3]

Manrique appealed on two points: that the evidence was insufficient to prove intent to murder, and that he was twice punished for the same offense contrary to the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. The Court of Appeals found the evidence sufficient, and concluded that "the two convictions of appellant for identical counts of attempted murder violate the Double Jeopardy Clause. They constitute multiple punishments for the same offense." *Manrique v. State,* 943 S.W.2d 115, 121 (Tex.App.—San Antonio 1997). It therefore affirmed the first judgment and reversed the second. *Ibid.* We granted both parties' petitions for discretionary review.

The Court of Appeals decided this case on two assumptions: that the appellant was convicted under Paragraph A of each indictment (that is, the paragraphs that alleged that the appellant had attempted to murder a person or persons unknown to the grand jurors), and that those paragraphs alleged the same offense. *See* 943 S.W.2d at 120 ("appellant was tried, convicted, and sentenced in Count I, Paragraph A of the [first] indictment ... for the *identical* offense for which he was tried, convicted, and sentenced in Count I, paragraph A of the [second] indictment"). *See also id.* at 118 n. 6 (Court of Appeals

would only consider the sufficiency of evidence as it related to Paragraph A of each indictment). Neither assumption is correct.

 The assumption that the appellant was convicted under Paragraph A of each indictment is contrary to the law and the evidence. The law is that, when a general verdict is returned and the evidence is sufficient to support a finding under any of the paragraphs submitted, the verdict will be applied to the paragraph finding support in the facts. *See Aguirre v. State,* 732 S.W.2d 320 (Tex.Cr. App.1987). In this case the evidence was sufficient to support a finding of guilt under either paragraph of each indictment. The Court of Appeals seemed to conclude that the evidence was not sufficient to prove guilt under Paragraph B of each indictment because the court's charge contained an abstract instruction on the law of transferred intent without an application of the law to the facts. See *Manrique v. State,* 943 S.W.2d at 118 n. 6. As we have subsequently held, the evidence is not to be held insufficient because of a defect in the court's charge. *Malik v. State,* 953 S.W.2d 234 (Tex.Cr.App.1997).

Although the Court of Appeals reasoning was not in accord with *Malik,* it was correct in overruling the appellant's point of error on sufficiency of evidence. Therefore we affirm the Court of Appeals decision to affirm the first judgment of conviction.

 The Court of Appeals' other assumption was that two convictions for "shooting at a person or persons unknown" must necessarily be for the same offense. Why this should be so was not explained, and we cannot agree that it is so on these facts. The appellant was trying to "light up" a house that contained more than four people, and he and his companion fired at least 26 shots. It seems reasonable to

---

**3.** See TEX. PENAL CODE § 3.03(a), which requires that sentences run concurrently when the accused is found guilty of more than one

offense arising out of the same criminal episode prosecuted in a single criminal action.

conclude that more than one unknown person could have been the objects of these murderous acts.

The appellant's claim that he has been convicted twice for the same offense fails at the outset, and it is unnecessary to decide whether the Double Jeopardy Clause permits multiple punishments for a single offense.

The decision of the Court of Appeals to reverse the second judgment of conviction is reversed, and the judgment of the district court is affirmed.

In No. 0589–97 (Court of Appeals No. 04–95–00943, district court no. 94–CR–5703–A), the judgments are affirmed. In No. 0834–97 (Court of Appeals No. 04–95–00944–CR, district court no. 94–CR–5702–A), the judgment of the Court of Appeals is reversed and the judgment of the district court is affirmed.

McCORMICK, P.J., filed a concurring opinion in which MANSFIELD, KELLER and KEASLER, JJ., join.

MEYERS, J., delivered a concurring opinion in which PRICE and JOHNSON, JJ., joined.

McCORMICK, Presiding Judge.

I join the Court's opinion. I write separately to set out my reasons for doing so. This is, among other things, a "multiple punishments" double jeopardy case in which the San Antonio Court of Appeals decided appellant was punished twice for the "same offense" in a single proceeding. *Manrique v. State*, 943 S.W.2d 115, 121 (Tex.App.—San Antonio 1997); see *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (setting out the three protections served by the Double Jeopardy Clause).

If the Court of Appeals correctly decided the sufficiency and the double jeopardy issues, then appellant is entitled to walk free based on the claim set out in his discretionary review petition. I agree with the holding in the Court's opinion that the Court of Appeals incorrectly decided the sufficiency issue. I also agree with the holding in the Court's opinion that, as a matter of state law, appellant has not been punished twice for the "same offense." The double jeopardy issue turns on an application of state law as do most double jeopardy questions in cases like this. See *Vineyard v. State*, 958 S.W.2d 834, 837 fn. 6 (Tex.Cr.App.1998) (determination of what constitutes an "offense" is largely a matter of state law). Based on these holdings it is unnecessary to decide the claim raised in appellant's discretionary review petition.

At approximately 4:00 a.m. appellant and a co-actor fired at least 26 rounds from an AK–47 assault rifle into a house which was occupied by various persons. The surviving victims, Edward and Donnie, were the only persons to suffer gunshot wounds. There was some evidence appellant intended to shoot up the house because he believed a rival gang member lived there. Neither Edward nor Donnie were this rival gang member.

Two indictments were returned against appellant with each indictment charging him with the offense of attempted murder. Each indictment alleged in two separate paragraphs that appellant intentionally and knowingly attempted to murder one or the other of the named victims or person and persons unknown to the grand jury.

The cases were tried in a single proceeding. In one case the jury was charged to convict if it found appellant intentionally or knowingly attempted to murder Edward or person or persons unknown to the grand jury. In the other case the jury was charged to convict if it found appellant intentionally or knowingly attempted to murder Donnie or person or persons unknown to the grand jury. The jury returned a general guilty verdict in each case. The jury assessed punishment at twenty years confinement in each case with the trial court ordering the sentences to run concurrently.

Appellant appealed each conviction to the Court of Appeals which disposed of the cases in one opinion. The Court of Appeals decided that, without the inclusion in each case of a transferred intent instruction in the application paragraphs of the jury charges, the evidence was insufficient to support appellant's convictions under the theories alleging the attempted murders of the named victims. *Manrique,* 943 S.W.2d at 118 fn. 6, 120 fn. 12.[1] The Court of Appeals decided the evidence was sufficient in each case to support appellant's convictions under the theories alleging the attempted murders of person or persons unknown to the grand jury. *Manrique,* 943 S.W.2d at 119.

Apparently relying on the *Blockburger* test[2] and looking solely to the indictments in each case, the Court of Appeals also decided that, since the allegations in each indictment were identical, appellant was punished twice for the "same offense" in violation of the Double Jeopardy Clause. *Manrique,* 943 S.W.2d at 120–21. The Court of Appeals ordered one of the cases dismissed and affirmed the conviction in the other case. *Manrique,* 943 S.W.2d at 121.

We granted ground one of appellant's petition for discretionary review and grounds one through three of the State Prosecuting Attorney's petition for discretionary review. Ground one of appellant's petition for discretionary review claims the Court of Appeals failed to address appellant's "essential sufficiency argument," namely the victims were known to the grand jury since the indictments named them. See *Hicks v. State,* 860 S.W.2d 419, 424 (Tex.Cr.App.1993) (explaining this rule of appellate evidentiary sufficiency review).[3]

Ground one of the State Prosecuting Attorney's petition for discretionary review claims identically worded indictments standing alone do not demonstrate a double jeopardy violation. Ground two claims the appellate principle of evidentiary sufficiency review, that a jury is presumed to have rendered a verdict upon a theory for which there is legally sufficient evidence,[4] is not implicated in a double jeopardy analysis, and the Court of Appeals erred to analyze the double jeopardy claim only as to the theory of guilt it decided the evidence supported. Ground three claims a transferred intent theory is not the only theory for which there is sufficient evi-

**1.** See *Boozer v. State,* 717 S.W.2d 608, 610 (Tex.Cr.App.1984) (explaining this rule of appellate evidentiary sufficiency review); *Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App. 1982) (op. on reh'g), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984) (same). We overruled *Benson–Boozer* in *Malik v. State,* 953 S.W.2d 234, 236–40 (Tex.Cr. App.1997) (sufficiency of the evidence measured on appeal by elements of the offense as defined by a hypothetically correct jury charge for the case).

**2.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (when the "same act or transaction" violates two distinct statutory provisions, the applicable test to determine whether there are two offenses or only one is whether "each provision requires proof of an additional fact which the other does not").

**3.** This is the argument appellant made in his direct appeal, in his petition for discretionary review and in his brief on the merits of his petition for discretionary review (Appellant's P.D.R. in No. 834–97 at page 8; Appellant's Brief in No. 834–97 at page 6). However, in his reply brief to the State Prosecuting Attorney's petition for discretionary review, appellant claims for the first time that the "person or persons unknown to the grand jury" allegations in the indictments refer to the rival gang member (Appellant's Reply Brief in No. 589–97 at page 9). Appellant also claims this was the prosecution's theory of the case.

The record reference appellant provides does not support this assertion (S.F., VII at 66). The prosecution's theory was that appellant intended to "light up [a rival gang member's] house," not that the "person or persons unknown to the grand jury" was the rival gang member.

**4.** See *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Cr.App.1991), cert. denied, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992) (explaining this rule of appellate evidentiary sufficiency review).

dence to support appellant's convictions for the attempted murders of the named victims, and, even if it is, the evidence is sufficient to support these convictions under this Court's decision in *Malik.*

## I. STATE PROSECUTING ATTORNEY'S PETITION FOR DISCRETIONARY REVIEW

### A. DOUBLE JEOPARDY

Concerning the double jeopardy question, the State Prosecuting Attorney claims:

> "[T]he case at bar is one involving 'multiple punishments.' Therefore, the test to be employed initially to determine any potential violation of the Double Jeopardy Clause is the *Blockburger* analysis. If the two offenses meet that test, they are not considered the 'same offense' and multiple punishments are authorized. However, if the two offenses do not meet that test, further inquiry should be made in order to determine whether there are indications of legislative intent to authorize multiple punishments. And, only if such an inquiry results in a negative finding will there be a double jeopardy bar to such multiple punishments."

I understand United States Supreme Court precedent to support the approach advocated by the State Prosecuting Attorney in cases involving "multiple punishments" in a single proceeding when a single act (or the same conduct) violates two separate statutes that define "in some abstract sense" the "same offense" under *Blockburger.* See *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (legislatures may authorize multiple punishments in a single proceeding for violation of separate statutes even though they may proscribe the "same conduct" under *Blockburger*); *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715, 729–30 (1980) (Rehnquist, J., dissenting) (Court has not always been forthright in recognizing that Con-

gress could authorize cumulative punishments in a single proceeding for violation of two separate statutes whether or not those statutes define "separate offenses" in some abstract sense), and at 729, 734 (Double Jeopardy Clause imposes no restraint upon a legislature's ability to authorize multiple punishments in a single proceeding under two separate statutes that define the "same offense" within the meaning of *Blockburger*). However, this is not a case involving "multiple punishments" in a single proceeding for a violation of two separate statutes by a single act.

I understand the *Blockburger* test applies only when "the same act or transaction constitutes a violation of two distinct statutory provisions." *Blockburger,* 52 S.Ct. at 182 (applying its "same-elements" test to the single act violating separate statutes), and at 181 (applying a different test to multiple acts violating the same statute); see also *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556, 568–73 (1993) (Scalia, J., joined by Kennedy, J.) and at 713–14, 113 S.Ct. at 2865, 125 L.Ed.2d at 579 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.); *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). In applying *Blockburger,* it is not very clear whether the focus is "on the statutory elements of the offenses charged" or "on the facts that must be proved under the particular indictment at issue." Compare *Dixon,* 509 U.S. at 696–700, 113 S.Ct. at 2856–58, 125 L.Ed.2d at 568–70 (Scalia, J.), *with, Dixon,* 509 U.S. at 716–17, 113 S.Ct. at 2866–67, 125 L.Ed.2d at 581 (Rehnquist, C.J., concurring in part and dissenting in part); *Parrish v. State,* 869 S.W.2d 352, 354 (Tex. Cr.App.1994) (core meaning of *Blockburger* "is now evidently more in dispute than ever before"). Either way, in applying *Blockburger* the Court of Appeals erred to rely solely on the indictments.

This case is not a "multiple punishments" or a "successive prosecution" case for a violation of two distinct statutory

provisions by the same act. And, this case is not quite like this Court's recent decision in *Vineyard* which was a "successive prosecution" case involving multiple violations of the same statute by a single act calling for a determination of whether the Legislature intended an "allowable unit of prosecution" for each violation. See *Vineyard*, 958 S.W.2d at 835–36.

Having decided what this case is not, it becomes necessary to decide what it is. This case involves "multiple punishments" in a single proceeding for multiple violations of the same statute by different acts with different victims. Each round fired from the AK–47 assault rifle was a different and discrete act. See *Blockburger*, 52 S.Ct. at 181 (delivery of narcotics on different days to same purchaser constituted separate offenses); *Manrique*, 943 S.W.2d at 121 fn. 13.

*Blockburger*, which was in part a case involving "multiple punishments" in a single proceeding for multiple violations of the same statute by different acts, also states the double jeopardy test for "sameness" in these circumstances:

> "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty." *Blockburger*, 52 S.Ct. at 181.

According to *Blockburger*, this test hinges on the legislative intent of the statute at issue.

> "In the present case, the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain. The question is controlled, not by (citation omitted), but by such cases as that of (citation omitted). There the accused was convicted under several counts of a

willful tearing, etc., of mail bags with intent to rob. The court (citations omitted) stated the question to be 'whether one who, *in the same transaction*, tears or cuts successively mail bags of the United States used in conveyance of the mails, with intent to rob or steal any such mail, is guilty of a single offense, or of additional offenses because of each successive cutting with the criminal intent charged.' Answering this question, the court, after quoting the statute, (citation omitted), said:

> 'These words plainly indicate that it was the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation. Whenever any one mail bag is thus torn, cut, or injured, the offense is complete. *Although the transaction of cutting the mail bags was in a sense continuous*, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged. The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag.' " *Blockburger*, 52 S.Ct. at 181–82. (Emphasis Supplied).

Based on this test, it is not difficult to conclude that a separate offense was committed with each round fired from the AK–47 assault rifle and that the "intention of the lawmakers" also was to protect each victim "from felonious injury and mutilation." See *Blockburger*, 52 S.Ct. at 181–82. Therefore, the two convictions and resulting punishments are not multiple punishments for the "same offense." [5] Whether the evidence is sufficient to support one or the other theories in the indictments has no bearing on the double jeopardy question.

---

**5.** The analytical approach taken in *Vineyard* would yield the same result. Assuming this case is like *Vineyard* and involves multiple violations of the same statute by appellant's *"single"* act of firing 26 shots from an AK–47

assault rifle into a house full of people, each victim in this case is an "allowable unit of prosecution." Cf. *Vineyard*, 958 S.W.2d at 837–40.

## B. TRANSFERRED INTENT AND SUFFICIENCY ISSUES

V.T.C.A., Penal Code, Section 6.04(b)(2), provides:

"A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person or property was injured, harmed, or otherwise affected."

This statutory principle of "transferred intent" is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person or both. See, e.g., *Norris v. State*, 902 S.W.2d 428, 436–39 (Tex.Cr.App.), cert.denied, 516 U.S. 890, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995) (in capital murder prosecution for "intentional" murder of more than one person during the same criminal transaction, transferred intent statute authorized the prosecution under one theory that defendant intentionally killed the intended victim and the unintended victim by the same act), and at 451–52 (Baird, J., concurring); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Cr.App. 1987) (op. on reh'g) (in prosecution for "intentionally and knowingly" causing the death of his daughter, defendant's intent transferred over to the killing of the child when defendant fired through a door intending to kill his former wife).

The State Prosecuting Attorney argues that even if a transferred intent theory is the only theory for which there is sufficient evidence to support appellant's convictions for the intentional or knowing attempted murders of the named victims, the evidence is nevertheless legally sufficient to support these convictions under *Malik*. The State Prosecuting Attorney also argues a transferred intent theory is not the only theory for which there is sufficient evidence to support these convictions making it unnecessary to apply *Malik* to this case.

Appellant contends the evidence is legally insufficient to support his convictions for the intentional or knowing attempted murders of the named victims because there is no evidence appellant "knew the house was occupied." He claims all the evidence shows is that he intended to "shoot up a house." Appellant also contends that retroactively applying *Malik* to his case would cause an "unjust result."

The evidence is sufficient to support a finding that appellant at least acted knowingly. See V.T.C.A., Penal Code, Section 6.03(b) (definition of culpable mental state of "knowingly"); *Kitchens*, 823 S.W.2d at 258 (when jury returns a general guilty verdict on an indictment charging alternative theories of committing the same offense, verdict stands if evidence supports any of the theories charged).[6] Firing 26 shots from an AK–47 assault rifle into a residence at 4:00 a.m. is sufficient to satisfy this culpable mental state element of the offense. See Section 6.03(b). Moreover, there is other evidence in this record to support a finding appellant "knew the house was occupied."

In addition, a transferred intent theory is not the only theory for which there is sufficient evidence to support appellant's convictions for the knowing attempted murders of the named victims. The evidence supports a finding or theory that appellant knowingly attempted to injure or harm anyone in the house.

It makes no difference to this sufficiency analysis whether a transferred intent theory may also have been raised by evidence that appellant's intended victim may have been a rival gang member and the named victims may have been appellant's unintended victims. See *Norris*, 902 S.W.2d at 436–39 (evidence supported capital murder conviction under a transferred intent theo-

---

6. The State Prosecuting Attorney also argues the evidence is sufficient to support a finding that appellant acted "intentionally" because it was his conscious objective to kill anyone in the house.

ry *and* under a nontransferred intent theory). Therefore, it is unnecessary to apply *Malik* to this case.

And, in any event appellant's argument that *Malik* should not apply to his case is unpersuasive. *Malik* overruled the *Benson–Boozer* cases in part because these cases permitted the greatest form of relief—an acquittal—to factually guilty and fairly tried criminal defendants simply because they received a windfall in the jury instructions. See *Malik*, 953 S.W.2d at 239. Under appellant's view of things, he would escape all criminal responsibility for firing at least 26 rounds from an AK–47 assault rifle into a house full of people simply because of a windfall in the jury instructions that has no effect on his factual guilt or his ability to prepare a defense to the charges against him. Applying *Malik* to appellant's case does not cause an "unjust result." So, even if a transferred intent theory is the only theory for which there is sufficient evidence to support appellant's convictions for the knowing attempted murders of the named victims, the evidence is legally sufficient under *Malik* to support these convictions.

With these comments I join the Court's opinion.

MEYERS, J., concurring.

I concur in the result. I write separately to address three issues.

First, the majority states, "[a]s we have subsequently held, the evidence is not to be held insufficient because of a defect in the court's charge. *Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997)." In *Malik*, this Court changed the measure used to review claims of legally insufficient evidence. Prior to *Malik*, the sufficiency of the evidence was measured by the indictment, as incorporated into the jury charge. *See Benson v. State*, 661 S.W.2d 708(Tex.Crim.App.1982) (opinion on State's second motion for r'hrg), *cert. denied* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984), *overruled by Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App.1997);

*Boozer v. State*, 717 S.W.2d 608 (Tex.Crim. App.1984), *overruled by Malik, supra.* *Malik* created a new measure for sufficiency of the evidence based on the "elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik*, 953 S.W.2d at 240. As such, the majority is correct to state that the evidence presented to the jury was not legally insufficient to convict based on the paragraphs naming the victims. The "hypothetically correct jury charge" for this case would have included an instruction on transferred intent in the application paragraph that was missing from the actual jury charge.

Second, the majority errs to assume that the State needed the theory of transferred intent in order to obtain convictions based on the indictment counts which named the victims. Also making this assumption, the Court of Appeals mixed evidentiary sufficiency review and double jeopardy analysis—two processes of appellate review with entirely separate purposes.

Addressing Appellant's claim that "there was no evidence of intent to murder the complainants specified," the Court of Appeals noted:

> Appellant points out that the doctrine of transferred intent (Tex. Penal Code Ann. § 6.04(b)) was given to the jury in the abstract portion of the court's charge but was not applied to the facts in the application paragraph. Thus he argues that the theory of transferred intent is not available to the state to support the conviction. With this premise the state concedes [sic], and we agree. *See Garrett v. State*, 749 S.W.2d 784, 788–89 (Tex.Crim.App.1986). *Therefore, we will only consider the sufficiency of the evidence as it relates to the allegation of attempted murder of a person or persons unknown to the grand jury in Paragraph A of each indictment.*

943 S.W.2d at 118 n. 6 (emphasis added). The Court of Appeals conducted a legal

sufficiency analysis as to the paragraphs listing unknown persons only, and apparently assumed the evidence would not support convictions as to the named complainants unless the State could rely on the doctrine of transferred intent. This assumption is erroneous.

Murder is defined, in relevant part, by section 19.02(b)(1) and (2) of the Texas Penal Code: "A person commits an offense if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual[.]" Criminal attempt is defined by section 15.01(a) of the Penal Code: "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." One type of attempted murder then is when a person knows that his conduct may cause serious bodily injury or death, does an act clearly dangerous to human life, and yet that act does not actually cause death.

The Penal Code defines the culpable mental states of "intentionally" and "knowingly":

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE § 6.03(a), (b). Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime. *Robles v. State*, 664 S.W.2d 91, 94 (Tex.Crim.App.1984); *Mouton v. State*, 923 S.W.2d 219, 223 (Tex.App.—Houston [14th Dist.] 1996, no pet.).

A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991), *cert. denied* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992) (acts, words, conduct); *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982) (same); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980) (same); *Cordova v. State*, 698 S.W.2d 107, 112 (Tex.Crim.App.1985), cert. denied, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986) (method and wounds). A jury may also infer knowledge from such evidence. *See, e.g., Martinez v. State*, 833 S.W.2d 188, 196 (Tex.App.—Dallas 1992, pet. ref'd). *Stahle v. State*, 970 S.W.2d 682, 687 (Tex.App.—Dallas 1998). This has been the rule in Texas for over 100 years.[1]

In addition, as the State argued in its brief to this Court:

Initially, it must be remembered that when an individual is identified as a

---

1. When in a case the question arises as to whether the accused intended to kill, the means used by him may be looked to. If a deadly weapon is used in a deadly manner, the inference is almost conclusive that he intended to kill; on the other hand, if the weapon was not a dangerous one, or was not used in a deadly manner, the evidence must be established by other facts.
*Hatton v. State*, 31 Tex.Crim. 586, 21 S.W. 679 (1893). While the 1974 Penal Code does not include the 1925 Code's statutory presumption regarding intent to kill, this Court has have cited *Hatton* with approval since the adoption of the 1974 Code. *Flanagan v. State*, 675 S.W.2d 734, 749 (Tex.Crim.App.1982). *See also Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App.1981) (law presumes an intent to kill where deadly weapon is fired at close range and death results).

victim in an indictment charging a crime such as murder or assault, the identity of such victim does not become a part of the defendant's *mens rea.* In other words, the defendant does not have to know the identity of the victim, nor [sic] does the State have to prove that the defendant knew such identity. Even though the identity of the victim in such a case becomes an element of proof for the State, and the failure to so prove will result in an acquittal, the identity of the victim does not become an element of the offense to which the culpable mental state of the defendant attaches.

For example, if a person picks out a particular individual named Joe Smith from a crowd of strangers, whose identity he does not know, and he then shoots that individual, the indictment charging the defendant with murder or some other assaultive offense will specifically name Joe Smith as the person shot. However, that does not mean that, in order to obtain a conviction, the State will have to prove that the defendant knew this identity. Instead, such an allegation effectively means that the defendant intentionally or knowingly assaulted a particular individual, *who happened to be Joe Smith.*

Thus, the fact that the indictments in the case at bar specifically named the victims of the attempted murders does not mean that the State had to prove that the appellant knew the identity of his victims at the time of the offense.

I agree. The identity of the victim is not an element of the crime to which the culpable mental state attaches.

The record shows Appellant fired multiple shots from an AK–47 into a house located in a residential area at 4:00 a.m. There is evidence that Appellant saw at least one person in the house while he was firing. In addition, there is evidence that Appellant knew the house was occupied as he was firing. Based on this circumstantial evidence the jury could reasonably infer that Appellant had either intent to kill the persons in the house or knowledge that his actions might reasonably lead to the death of persons in the house. "Edward Avilez" and "Donnie Avilez" are the names of the persons in the house who were hit by Appellant's gunfire. The State therefore presented evidence from which a jury could logically conclude that Appellant either had intent to kill Edward and Donnie Avilez, or knew that his actions might reasonably lead to the death of Edward and Donnie Avilez. The fact that Appellant did not know the identity of the persons at whom he was shooting is irrelevant. *See Salisbury v. State,* 90 Tex.Crim. 438, 235 S.W. 901, 902 (1921) (defendant can be found guilty of murder where he shoots into a car or building he knows to be occupied).

While the evidence would support convictions based on the theory of transferred intent, that theory was by no means necessary. The evidence in some cases will support a conviction regardless of whether the State decides to pursue a transferred intent theory. *See also Norris v. State,* 902 S.W.2d 428, 436 (Tex.Crim.App.1995) (evidence supported capital murder conviction with or without application of transferred intent). The Court of Appeals thus erred to commingle the evidentiary sufficiency review and double jeopardy analysis; it was incorrect to disregard the paragraphs of the indictments naming Edward and Donnie Avilez as victims.

Third, our recent decision in *Ex parte Goodbread,* 967 S.W.2d 859 (Tex.Crim.App.1998) also supports the conclusion that there is no double jeopardy bar to prosecuting Appellant for two acts of attempted murder in the absence of the indictment paragraphs naming the victims. In *Goodbread,* we considered "whether prosecution upon the initial indictment creates a double jeopardy bar to prosecution upon the subsequent indictments [which include the same offense, same manner of commission, and dates within the same statute of limitations period] merely because the subsequent indictments would

support convictions for offenses that would also have been *supported* under the language of the initial indictment." *Goodbread,* 967 S.W.2d at 860. Relying on *Luna v. State,* 493 S.W.2d 854 (Tex.Crim.App. 1973), which stated that the Double Jeopardy Clause bars a second prosecution for the *identical criminal act* and not the same offense by name, and *Walker v. State,* 473 S.W.2d 499 (Tex.Crim.App. 1971), which provided that Double Jeopardy bars prosecution only for offenses for which proof was offered at trial, we concluded that "trial upon an indictment does not bar every offense that could be prosecuted under its language; instead, trial upon the indictment bars prosecution only for offenses for which proof was offered at trial." *Goodbread,* 967 S.W.2d at 861. In the context of *Goodbread,* that means that each instance of sexual assault of a child is a separate crime and may be prosecuted separately. In the context of Appellant's case, that means that each instance of attempted murder is a separate crime and may be prosecuted separately. So long as the proof offered at trial shows two separate instances of attempted murder, the fact that the indictments are identically worded is irrelevant.[2]

With these comments, I concur in the result.

---

2. In my concurring opinion in *Goodbread,* I raised concerns about the new measure of evidentiary sufficiency: "The problem is, how can we ascertain that the separately alleged offenses are distinct from one another, given that the face of the subsequent indictments would support the same convictions that would also have been *supported* under the initial indictment." In the present case, this problem does not exist because each of the two alleged offenses has a different victim.