*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-09-00018-CR

Antonio **MARQUEZ** a/k/a Tony Marquez,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B08-422
Honorable Emil Karl Prohl, Judge Presiding

Opinion by: Catherine Stone, Chief Justice

Sitting: Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed: November 4, 2009

AFFIRMED IN PART; VACATED IN PART; AND REMANDED

Antonio Marquez was convicted of attempted murder. On appeal, Marquez claims: (1) the evidence is factually insufficient to sustain a conviction for attempted murder; and (2) his sentence is illegal because it is outside the maximum range of punishment authorized by law. We affirm the trial court's judgment of conviction and remand to the trial court for a new sentencing hearing.

## BACKGROUND

The Bandidos Motorcycle Club is recognized by various law enforcement organizations as a criminally organized motorcycle gang. Marquez is a member of the Kerrville, Texas chapter of the Bandidos Motorcycle Club and served as the local chapter's vice president and sergeant of arms. Marquez regularly stayed at the Bandidos's clubhouse, and he was there on the morning of February 24, 2007, when an unidentified man appeared at the clubhouse carrying a knife.

After Marquez disarmed the man, Marquez began to fight with him outside the Bandidos's clubhouse. Marquez readily defeated the individual, but nevertheless decided to retrieve his pistol from inside the clubhouse. He proceeded to fire several shots at the individual as the unidentified man attempted to run from him.

Officers from the Kerrville Police Department arrived at the scene and found empty shell casings for a .45 caliber pistol outside the Bandidos's clubhouse as well as a loaded .45 caliber Para-Ordnance pistol inside the clubhouse. Although the officers were unable to locate the shooting victim or establish his identity, Marquez was subsequently arrested and indicted for the attempted murder of the individual seen running from the clubhouse.[1]

Marquez pleaded not guilty and the case was set for trial before a jury. At trial, the jury heard the testimony of several witnesses, including an officer from the Texas Department of Public Safety, several officers from the Kerrville Police Department, and two eyewitnesses. Marquez did not testify at trial.

Texas Department of Public Safety Officer Brian Vaughn testified his organization considers the Bandidos Motorcycle Club a "criminal[ly] organized motorcycle gang." Vaughn stated he

---

[1] Officers were never able to ascertain the identity of the shooting victim despite diligent efforts.

interviewed Marquez following his arrest and confirmed Marquez is the sergeant of arms and vice president of the Kerrville chapter of the Bandidos Motorcycle Club. He also learned that an individual came to the Bandidos's clubhouse on the morning of the shooting looking for drugs. Marquez reported to Officer Vaughn the individual was carrying a steak knife and shot a look at Marquez that made him uncomfortable. Marquez threw the individual's knife into the clubhouse and began to fight with the individual. Despite being defeated by Marquez, the individual purportedly "wanted a little bit more" from Marquez. Marquez told Officer Vaughn he intended to "finish it" so he retrieved his .45 caliber pistol from the clubhouse to shoot the individual "point blank." When Marquez tried to shoot the firearm, however, it allegedly would not fire because the magazine had fallen out. Marquez further told Officer Vaughn that by the time he could retrieve another magazine from the clubhouse, the unidentified individual was gone.

James Hale, a local resident, lives next door to the Bandidos's clubhouse. Hale testified he observed Marquez and an unknown individual fighting in the street. After the fight ended, Hale saw Marquez return to the Bandidos's clubhouse while the unidentified man attempted to run from the clubhouse. According to Hale, it was at this time he heard two gun shots and called 911. Hale testified he did not see who had fired the shots.

Jason Doss, who was working at a nearby bar at the time of the shooting, testified he observed an unknown individual running away from Marquez, who was holding a pistol. Doss stated he witnessed Marquez fire at least two shots at the individual. He testified "the guy that was running away . . . [acted] as if he had been hit."

Officer Scott Gaige of the Kerrville Police Department testified he was dispatched to the Bandidos's clubhouse in response to a "shots-fired call." Gaige arrived at the Bandidos's clubhouse

and observed Marquez and another club member, Joseph Cunningham, looking for something on the ground outside the clubhouse. Gaige further observed something protruding from Marquez's waistband. Gaige immediately confronted Marquez and Cunningham, and he ordered them to get on the ground. Cunningham complied with Gaige's command, but Marquez kept his hands on his waistband and ran back inside the Bandidos's clubhouse.[2] Marquez emerged from the clubhouse a short time later without the bulge in his waistband and was taken into custody by police. Officer Gaige noted that empty .45 caliber shell casings were found close to where he first observed Marquez and Cunningham.

Officer Matthew Cotts of the Kerrville Police Department also testified at trial. Cotts testified he heard two gun shots on the morning in question as he was standing outside the police station. Although Cotts was not officially dispatched to investigate the shots-fired call, he nevertheless proceeded to the Bandidos's clubhouse to assist his fellow officers. Cotts stated he attempted to locate the shooting victim after he reached the crime scene, but was unsuccessful in locating him. He further testified officers discovered two empty shell casings outside the Bandidos's clubhouse.

Lastly, Officer Jonathan Lamb of the Kerrville Police Department testified he was the evidence technician responsible for processing the crime scene. He stated he found pieces of a necklace laying outside the Bandidos's clubhouse as well as two empty shell casings from a .45 caliber pistol. Lamb testified there was a .45 caliber Para-Ordnance pistol laying on a counter of the clubhouse when he assessed the crime scene. He reported the firearm had its safety disengaged and

---

[2] Officer Kyle Schneider of the Kerrville Police Department confirmed Marquez returned to the clubhouse when he was confronted by police.

hammer cocked, and was loaded with 11 live rounds of ammunition. According to Lamb, a .45 caliber Para-Ordnance pistol is capable of holding 13 rounds of ammunition when fully loaded. Lamb further explained officers located only one magazine for the .45 caliber Para-Ordnance pistol during their search of the crime scene area — the one inside the firearm itself. Lamb also noted officers discovered a box of .45 caliber ammunition inside the clubhouse as well as a steak knife laying by the front door. Lamb stated he believed the two empty shell casings found outside the clubhouse matched the ammunition located inside the clubhouse.

After hearing all the evidence, the jury found Marquez guilty of attempted murder. The jury assessed Marquez's punishment at 25 years confinement, and this appeal followed.

### SUFFICIENCY OF THE EVIDENCE

Marquez claims there is factually insufficient evidence to support his conviction. In reviewing the factual sufficiency of the evidence, we look at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We may not substitute our judgment for that of the jury under a factual sufficiency review. *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

The Texas Penal Code sets out the elements for a criminal attempt: "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003). The phrase "with specific intent to commit an offense" means the

accused must intend to bring about the desired result which, in the case of attempted murder, is the death of an individual. *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1984). Thus, the evidence must show the accused had the specific intent to kill to be convicted of attempted murder. *Id.*

A defendant's intent to commit an offense "may be inferred from [his] acts, words and conduct." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). The jury may infer a specific intent to kill from the use of a firearm, a deadly weapon. *Graves v. State*, 782 S.W.2d 5, 6 (Tex. App.—Dallas 1989, pet. ref'd). "[A] deadly weapon used in a deadly manner almost conclusively supports the inference that the accused intended to kill." *Id.*

In establishing its case, the State elicited substantial evidence demonstrating Marquez is guilty of attempted murder. The record shows the jury heard Marquez was observed firing at least two shots from a pistol at an unknown individual on the morning in question. The jury heard the unidentified individual acted "as if he had been hit" after Marquez fired his weapon. Besides hearing the testimony of an eyewitness concerning Marquez's attempt on the unidentified individual's life, the jury heard testimony suggesting Marquez had a bulge in his waistband when officers arrived at the crime scene. When Marquez saw officers, he grabbed his waistband and ran inside the Bandidos's clubhouse. The record shows that when Marquez emerged from the clubhouse, he no longer had the bulge in his waistband and that a loaded .45 caliber pistol was found inside the clubhouse.

The jury also heard testimony indicating the pistol found at the crime scene is capable of holding 13 rounds of ammunition. When officers unloaded the weapon, however, it had only 11 rounds of ammunition in it. The record shows officers discovered two additional .45 caliber shell

casings outside the Bandidos's clubhouse close to where Marquez and Cunningham were observed by officers. The jury further heard that the empty shell casings found outside the clubhouse matched ammunition found inside the clubhouse.

Marquez's own statements to police following his arrest further support the jury's verdict. Marquez reported to an officer after his arrest that an unidentified individual showed up at the Bandidos's clubhouse carrying a steak knife. Even though Marquez was able to disarm the individual, he nevertheless decided to retrieve his pistol from inside the clubhouse when he felt the man still "wanted a little bit more." Marquez reported to the officer that he retrieved his pistol to shoot the individual "point blank" and "finish it." When all of the evidence is viewed in a neutral light, we cannot say the jury's findings are clearly wrong or manifestly unjust or that they are against the great weight and preponderance of the evidence.

Marquez argues the evidence is factually insufficient because the State failed to prove the following: (1) the identity of the person he allegedly tried to murder; (2) he actually shot and wounded the unidentified individual; (3) he discharged the pistol in a deadly manner; and (4) the pistol found by officers had actually fired any rounds of ammunition. First, there is no requirement that the State prove the actual identity of an attempted murder victim to secure a conviction for attempted murder. *See* TEX. CODE CRIM. PROC. ANN. art. 21.07 (Vernon 2009) ("When the name of the person is unknown to the grand jury, that fact shall be stated . . . ."); *Manrique v. State*, 994 S.W.2d 640, 641-43 (Tex. Crim. App. 1999) (recognizing the State may prosecute a defendant for attempted murder on a person or persons unknown to the grand jury). Second, "the offense of attempted murder does not require actual physical harm to the intended victim to support a finding of specific intent." *Graves*, 782 S.W.2d at 6-7. In any event, the jury heard eyewitness testimony

from which it could conclude the victim was harmed. An eye witness testified the unidentified individual acted "as if he had been hit" after Marquez fired his pistol. Third, the jury heard testimony that Marquez deliberately aimed and fired two shots from a firearm at another individual. Such testimony refutes Marquez's notion that the record is devoid of evidence showing he discharged the pistol in a deadly manner. *See id.* at 7 (concluding appellant's deliberate aiming and firing of a gun at the complainant's window constituted use of a firearm in a deadly manner). Lastly, the jury heard circumstantial evidence suggesting the pistol found by officers fired several rounds of ammunition. At the scene, officers recovered two empty shell casings of the same caliber as the pistol seized by police and matching ammunition found inside the clubhouse. Moreover, the jury heard testimony establishing the pistol found by officers is capable of holding 13 rounds of ammunition, yet it had only 11 rounds in it when unloaded by police. From this testimony, it was reasonable for the jury to infer that the gun recovered from inside the clubhouse was the same gun Marquez used to shoot two rounds of ammunition at the unidentified individual. Marquez's third issue is therefore overruled.

### ILLEGAL SENTENCE

Marquez further argues his sentence is illegal because it is outside the maximum range of punishment authorized by law. Defendants have "an absolute and nonwaivable right to be sentenced within the proper range of punishment established by the Legislature." *Speth v. State*, 6 S.W.3d 530, 532-33 (Tex. Crim. App. 1999). "A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003).

Marquez was convicted of attempted murder, which is a second-degree felony.[3] The punishment range for such an offense is between 2 and 20 years. TEX. PENAL CODE ANN. § 12.33(a) (Vernon 2003). The 25-year sentence assessed by the jury clearly falls outside the authorized range of punishment set forth by the legislature and therefore constitutes an illegal sentence. *See Mizell*, 119 S.W.3d at 806. Because Marquez's sentence is illegal, we must sustain his first and second issues on appeal.

## CONCLUSION

Under the circumstances presented, we must affirm the trial court's judgment of conviction. However, due to Marquez's illegal sentence, we must vacate the sentence imposed and remand the cause to the trial court for a new sentencing hearing.[4]

Catherine Stone, Chief Justice

DO NOT PUBLISH

---

[3] Murder is generally a first-degree felony. TEX. PEN. CODE ANN. § 19.02(c) (Vernon 2003). The penalty for criminal attempt is one category lower than the offense attempted. *Id.* § 15.01(d). Attempted murder is thus categorized as a second-degree felony.

[4] *See, e.g., Mizell v. State*, 70 S.W.3d 156, 163 (Tex. App.—San Antonio 2001), *aff'd*, 119 S.W.3d 804 (Tex. Crim. App. 2003) (vacating an illegal sentence and remanding for a new sentencing hearing). The State concedes Marquez is entitled to a new sentencing hearing due to his illegal sentence.