

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00209-CR

DENNIS WOLFENBARGER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 16F1160-005

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# OPINION

Dennis Wolfenbarger was convicted by a Bowie County jury of aggravated sexual assault of a child under six years of age[1] and assessed a punishment of life imprisonment, court costs, and the cost of electronic monitoring. On appeal, Wolfenbarger contends (1) that legally insufficient evidence supports the jury's finding that his victim was under six years of age at the time of the offense and (2) that the trial court erred by assessing the cost of electronic monitoring against him.

Since we find that sufficient evidence supported the jury's finding and that the trial court did not err in its assessment of the cost of electronic monitoring, we will affirm the trial court's judgment.

## I.      Sufficient Evidence Supports the Jury's Findings

### A.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*,

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(f)(1).

2

214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. denied) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

**B.     Analysis**

A person commits aggravated sexual assault of a child when he "[(1)] intentionally or knowingly . . . [(2)] causes the penetration of the anus or sexual organ of a child by any means . . . and . . . [(3)] the victim is younger than 14 years of age." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B). This offense is classified as a first-degree felony. TEX. PENAL CODE ANN. § 22.021(e). But if the child is under six years old, the minimum punishment is increased to twenty-five years' imprisonment. TEX. PENAL CODE ANN. § 22.021(f)(1). In this appeal, Wolfenbarger only challenges the legal sufficiency of the evidence showing that his child victim was under six years of age.

Viewed in the light most favorable to the jury's verdict, the evidence at trial relevant to this issue showed that the victim, John,[2] was born on March 8, 2005. When John was four years old, he and his mother, Heather, began living with Wolfenbarger. Heather and Wolfenbarger were eventually married on August 13, 2010, and separated on September 22, 2011. While they were living together, Heather was employed, and Wolfenbarger was not. Consequently, when John would be ill and could not go to school,[3] he stayed home with Wolfenbarger.

In November 2016, when John was eleven years old, he made an outcry to Heather and told her that Wolfenbarger "had raped [him] and stuck his fingers in [his] butt" several times when she was not at home. He also told her that Wolfenbarger had threatened to kill Heather and him if he ever told anyone. Heather did not know the dates of the incidents, but testified that John told her that they occurred when he was "four or five, six[, a]round those ages."

Heather reported the incident to the Bowie County Sheriff's Department (BCSD). David Biggars, who investigated the allegations for the BCSD, testified that everything that Heather and John told him was that John was less than six years old when the assaults occurred.

Shortly after his outcry to Heather, John was interviewed by Kaleigh Dodson, a forensic interviewer at the Texarkana Children's Advocacy Center (CAC). Dodson testified that during the forensic interview, John told her a couple of times that he was "three or four and four or five" when the assaults occurred. She also acknowledged that John told her that the assaults occurred

---

[2]We refer to the child victim by a pseudonym. *See* TEX. R. APP. P. 9.10.

[3]John attended a pre-K at an elementary school.

4

while his mother was married to Wolfenbarger and that they happened while his mother was at work and left him at home with Wolfenbarger.

Elizabeth McCulley is a licensed professional counselor who was treating John in November 2016. She testified that a few days after his outcry to Heather, John told her that the assaults occurred when he was four or five years old.

At trial, John testified that when Wolfenbarger was married to his mother, Wolfenbarger would come into his bedroom and spank him on his back and the back of his thighs with a belt. He explained that he was four or five when this happened. He also testified that Wolfenbarger sexually abused him by penetrating John's anus with his finger.

At first, John testified that this happened when he was five or six. Yet, when asked to clarify whether he was four or five, or five or six, John stated that he was four or five. He also testified that the assaults occurred when his mother was not at home, that they happened on more than one occasion, and that Wolfenbarger threatened to kill his mother and him if he ever told anyone. On cross-examination, John denied telling the CAC interviewer that he was three or four and that he was six or seven when the assaults occurred. Rather, he maintained that he has consistently said that he was four or five.

Wolfenbarger attacks the reliability of John's testimony because he cannot give the specific dates when the assaults occurred or his exact age at the time. Wolfenbarger also points to the inconsistency of John's testimony about his age when the assaults occurred. He argues, the only reliable evidence was John's testimony that the assaults occurred while his mother and Wolfenbarger were married and living together, which he maintains was firmly established as

5

between August 13, 2010, and September 22, 2011. Thus, he argues, the evidence shows that the assaults occurred when John was either five or six, and a rational jury could not have found John was under six years of age beyond a reasonable doubt. We disagree.

Heather testified that she and John began living with Wolfenbarger when John was four years old. This would have been as early as March 8, 2009, a year and five months before they were legally married. A rational jury could infer that a four-year-old child could believe that since his mother was living with Wolfenbarger, she was married to him, and that when John said that his mother and Wolfenbarger were married when the assaults occurred, that period included the entire time they lived together. John also firmly testified that the assaults occurred when he was four or five, and that testimony tracked what he told McCulley and Dodson shortly after his outcry. Even though there were some inconsistent statements, the jury could resolve those inconsistencies and believe John's testimony and prior statements that he was four or five at the time of the assaults. As a result, a rational jury could have found, beyond a reasonable doubt, that John was under the age of six at the time of the assaults. *See Brooks*, 323 S.W.3d at 912.

Based on this record, we find that legally sufficient evidence supports the jury's finding that John was under six years of age at the time of the assaults. We overrule Wolfenbarger's first issue.

## II.     The Trial Court Did Not Err in Assessing the Cost of Electronic Monitoring

In his second issue, Wolfenbarger contends that the trial court erred in assessing a $2,145.00 fee for electronic monitoring as a court cost. He argues that the assessment of this cost is not authorized by statute and that there is no basis for the assessment of the cost.

6

A judgment of conviction is required to order a defendant to pay costs. *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) (citing TEX. CODE. CRIM. PROC. ANN. arts. 42.15–.16). Even so, "[o]nly statutorily authorized court costs may be assessed against a criminal defendant." *Id.* (citing TEX. CODE. CRIM. PROC. ANN. art. 103.002).

Along with being authorized by statute, there must be a basis in the record for the assessment of the cost. *See id.* at 389–90. A bill of cost will serve as a basis of a cost assessed in the judgment when it contains the items of the cost, it is signed by the officer who charged the cost or who is entitled to receive payment for the cost, and it is certified by an officer of the court. *Id.* at 392 (citing TEX. CODE. CRIM. PROC. ANN. arts. 103.001, 103.006).

The amended judgment assessed "GPS MONITORING $2,145.00" as a cost against Wolfenbarger. The record also shows that the magistrate set one of the conditions of Wolfenbarger's bond as "Ankle Monitor for Work and Dialysis." Article 17.44 provides, "A magistrate may require as a condition of release on bond that the defendant submit to . . . home confinement and electronic monitoring." TEX. CODE. CRIM. PROC. ANN. art. 17.44(a)(1). It also authorizes the cost of the electronic monitoring to be assessed as costs of court. TEX. CODE. CRIM. PROC. ANN. art. 17.44(e).

The record contains a felony statement of cost, signed and certified by the district clerk in the total amount of $634.00.[4] The record also contains a bill of costs, fines, and restitution (the Bill of Costs) attached to the trial court's order to withdraw funds. The Bill of Costs lists "Court Costs" of $634.00 and a "Fine - GPS MONITOR FEE" of $2,145.00 and is signed and certified

---

[4]Besides the GPS monitoring, the amended judgment also assessed court costs of $634.00.

7

by the district clerk. We find that the Bill of Costs satisfies the requirements of a bill of costs under Articles 103.001 and 103.006 and therefore provides a basis in the record for the assessment of the cost of the electronic monitoring.

Since the assessment of the cost of electronic monitoring is authorized by statute, and there is a basis in the record for the assessment of this cost, we find that the trial court did not err in assessing this cost. We overrule Wolfenbarger's second issue.

## III. Conclusion

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice


Date Submitted:     July 1, 2019
Date Decided:      July 23, 2019

Publish

8