COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JAVIER CORTEZ,                                           )                  No. 08-04-00099-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  243rd District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D04202) 

CORRECTED OPINION

            Javier Cortez appeals his conviction for retaliation. Appellant was found guilty of the offense
by a jury. The trial court sentenced him to sixty years in the Texas Department of Criminal Justice
Institutional Division. Finding the evidence to be both legally and factually sufficient to support the
conviction, we affirm.
FACTUAL SUMMARY
            On November 8, 2002, Rachel Brito and her brother, Johnny Sosa, drove to Fabens to visit
her father. Since he was not home, they headed back toward Socorro and stopped at a bar along the
way. For three hours, they drank with some men Rachel did not know. Appellant, one of the men
at the bar, accompanied Rachel and Johnny when they left. Rachel sat in the front passenger seat
while Appellant sat in the back seat. En route to Rachel’s mother’s house in Socorro, Appellant
twisted Rachel’s face backward and forced her to kiss him. Rachel was holding a bottle of beer and
hit Appellant on the shoulder with it. When they arrived at their destination, Johnny and Appellant
began arguing. Rachel told Johnny to go inside.
            Appellant asked for a ride back to Fabens, but Rachel told him to go down to the Good Times
store and call someone to pick him up. The store was a block away, and Rachel stepped into the
street to direct Appellant in the right direction. Appellant pulled her into a small space behind the
concrete wall where Appellant tried to kiss her again. When Rachel tried to get away, Appellant
started pressing her breast hard with his hands and tore her clothing off. He began sucking on her
breast and then tried to push her toward his penis. Rachel tried to get back up, but Appellant pulled
her legs and climbed on top of her. She was lying on the ground and trying to push Appellant off
of her when Appellant twisted her over onto her stomach and got on her back. Rachel was
screaming, and Appellant told her to shut up. Rachel remembered Appellant’s fingers on her back
and in her vagina and anus. 
            Rachel finally told Appellant that they could go to a hotel. She said she had money and the
keys to the car and would take him back to Fabens. Rachel got up and dressed and started walking
back to her mother’s house with Appellant walking behind her. Once Rachel approached the front
gate, she ran as fast as she could and she heard Appellant running behind her. Rachel opened the
front door and yelled to her mother that someone was trying to rape her. Her torn outfit fell all the
way down as she entered the house. Appellant entered the house and tried to pull Rachel outside. 
Her mother, Lorenza Dominguiz, called for her husband, Victor. Rachel went into the living room
and sat down. The next thing she remembered was the ambulance arriving. 
            Lorenza testified that she was in the kitchen when Johnny arrived home. Around 10:00,
Rachel came into the living room disheveled and without her clothes. She was yelling about a man
when Lorenza saw him enter the house. Lorenza called out to Victor, who was in the bedroom. 
Victor came into the living room and saw a man he identified as Appellant. Victor told Appellant
to leave and that he was going to call the police. Appellant threatened the family, saying he would
kill them. Victor tried to stop Appellant from leaving since he wanted to hold him until the police
arrived but Appellant grabbed him and took him outside to the porch. Appellant pounded on Victor,
pulled his hair, and kicked him before Victor lost consciousness. Appellant hit Victor’s head against
the cement, and kicked out several of his teeth. Lorenza pushed Appellant toward the gate and told
him that the police were on their way. Appellant repeated his threat that he would kill the family. 
He then ran across the field and disappeared. Victor then got up and went for help. 
            Socorro Police Officer Jesus Ramirez arrived on the scene and found Rachel shaking and
crying on the couch. She was wearing black overalls, which were torn all the way down her back
to her waist, and her hair was covered with grass. Officer Ramirez obtained statements from Rachel
and Lorenza. Ramirez then called an ambulance that transported Rachel to Sierra Medical Center. 
At the hospital, a rape examination was performed on Rachel. The examination showed scratches
and a bruise on Rachel’s back and weeds in her hair. Victor was transported to Thomason Hospital. 
            Socorro Police Officer Robert Wiest was dispatched to locate the suspect. Before locating
the suspect, he searched approximately two blocks from the occurrence for about ten minutes. 
Officer Ramirez then took Appellant to a substation where he was placed in a holding cell. Ramirez
noticed blood on Appellant’s face and called an ambulance. Ramirez accompanied Appellant to
Thomason Hospital. 
            Alfredo Medina of the El Paso County Sheriff’s Department also responded to the scene. 
He and Detective Jaime Terrazas proceeded to Sierra where Terrazas took Rachel’s statement. He
described her as upset, crying, and intoxicated. 
            Medina and Terrazas also went to Thomason where Appellant and Victor were being treated. 
Terrazas checked on Victor’s condition but did not take a statement since the Socorro Police
Department was handling the assault case. Appellant was treated for a laceration on his head and
an injury to one of his ears and then taken to the sheriff’s office for questioning. 
            Appellant waived his rights and gave a written statement. He told officers he had been
drinking, but Officer Medina did not believe he was intoxicated. Appellant explained that he was
at a bar drinking with friends when a girl named Rachel and another guy joined them. Appellant
noticed they were drunk. Appellant ran out of money and asked the guy to drive him to his brother’s
house. Along the way, Appellant noticed the driver was very drunk and asked him to pull over. The
driver finally dropped him and Rachel off in Socorro. 
            During the car ride, Appellant was kissing Rachel and noticed that she was wearing a black
dress without a bra or panties. After being dropped off, Appellant and Rachel walked for a while
and stopped to make out. Appellant admitted he kissed Rachel’s mouth and breasts and digitally
penetrated her, but he denied having sex with her. Rachel would allow Appellant to touch her and
then tell him to stop but since she was really drunk, Appellant did not think she knew what she was
doing. Rachel told him she wanted to get a room somewhere so they could have sex. She asked him
to take her to her house so she could get some money. 
            When they got to the house, Rachel told her parents that Appellant tried to rape her but they
had not actually had sex. She later changed her story. Victor accused Appellant of raping Rachel,
and Appellant tried to explain what happened. Rachel’s parents then assaulted him. Appellant
pushed Victor down, and Lorenza tried to help her husband by beating Appellant with a pipe or bat. 
Appellant did not remember hitting Lorenza. Appellant was finally able to fight them off and leave
the house. He then laid down in the grass in pain until officers found him. 
            Dr. Matthew Walsh examined Victor’s injuries. Victor had a large hematoma on his
forehead and a fractured collarbone. The collarbone injury caused great pain, and Victor was given
narcotics. A CT scan and x-rays were performed due to the head injury and his arm was placed in
a sling. Dr. Walsh diagnosed a closed-head injury with concussion. He was unable to fully examine
Victor’s shoulder due to the pain but recommended a followup to determine the extent of the
injuries. The clavicle could take up to two months to heal and could cause disfigurement where the
bones healed “crooked”. Victor had no injuries that would threaten the viability of his arm or the
use of his hand but Dr. Walsh characterized the injury as very painful. 
            After the clavicle healed, Victor was still having pain in his arm. After an MRI, a tear was
found in Victor’s rotator cuff which caused significant pain and the inability to handle heavy lifting
or significant movement. A torn rotator cuff that is not treated results in chronic pain and limited
use of the arm. 
            Victor also had several teeth knocked out and had to undergo a medical procedure to correct
the damage to his gums. Because he had diabetes, all of his teeth had to be removed. He testified
that he was embarrassed, could not eat everything, and had lost weight. He also described his face
as sunken due to the loss of his teeth. Although he was only forty-seven years of age, he looked like
a little old man. Victor considered the injury disfiguring. By the time of trial, Victor had had
surgery to repair his shoulder but he still could not lift his arm. He continued to have pain in his
head and shoulder and could no longer rake or mow the lawn.
            After Appellant gave his statement, he was taken to Sierra Medical Center where swabbings 
 
 
from his nails and saliva were taken as part of a rape kit. Terrazas witnessed the specimens being
taken. The rape kits from Rachel and Appellant were submitted to the Texas Department of Public
Safety crime lab. DNA was extracted from Rachel’s breast swabs. Appellant’s saliva was found on
Rachel’s breast. 
SUFFICIENCY OF EVIDENCE
            In two points of error, Appellant challenges the legal and factual sufficiency of the evidence
to support his conviction for retaliation. 
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds by, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard
gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443
U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign
credibility to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of
fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the
verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved
in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for
both direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997). 
Retaliation
            A person commits an offense if he intentionally or knowingly harms another by an unlawful
act in retaliation for or on account of the service or status of another as a public servant, witness,
prospective witness, or informant or as a person who has reported or who the actor knows intends
to report the occurrence of a crime. Tex.Pen.Code Ann. § 36.06(a)(1)(Vernon Supp. 2004-05). 
The first count of the indictment charged Appellant with intentionally and knowingly threatening
to harm Lorenza by an unlawful act, to wit: to kill Lorenza in retaliation for or on account of the
service or status of Lorenza as a person who Appellant knew intended to report the occurrence of
a crime. The second count of the indictment charged Appellant with intentionally and knowingly
threatening to harm Victor by an unlawful act, to wit: to kill Victor in retaliation for or on account
of the service or status of Victor as a person who Appellant knew intended to report the occurrence
of a crime. 
            “[A] person does not commit an offense unless he intentionally, knowingly, recklessly, or
with criminal negligence engages in conduct as the definition of the offense requires. 
Tex.Pen.Code Ann. § 6.02(a)(Vernon 2003). In order to constitute a crime, the act or actus reus
must be accompanied by a criminal mind or mens rea. Cook v. State, 884 S.W.2d 485, 487
(Tex.Crim.App. 1994). The offense of retaliation requires proof of a culpable mental state of
knowingly or intentionally. Tex.Pen.Code Ann. § 36.06(a)(1). Proof of a culpable mental state
can be inferred by circumstantial evidence. Wolfe v. State, 917 S.W.2d 270, 275 (Tex.Crim.App.
1996). A jury may infer intent or knowledge from “the acts, words, and conduct of the accused.” 
Hart v. State, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002), citing Manrique v. State, 994 S.W.2d 640,
649 (Tex.Crim.App. 1999). Voluntary intoxication is not a defense to the crime of retaliation. 
Hudspeth v. State, 31 S.W.3d 409, 411 (Tex.App.--Amarillo 2000, pet. ref’d); Tex.Pen.Code Ann.
§ 8.04(a)(Vernon 2003). 
 

Application
            Officer Medina testified that although Appellant admitted he had been drinking the evening
of the incident, Medina did not believe that Appellant was intoxicated. Defense counsel elicited
testimony from Medina to the effect that Appellant was sober and clear-headed. Moreover,
voluntary intoxication is not a defense to committing a crime. The jury could have inferred from
Appellant’s conduct that he intentionally and knowingly threatened Lorenza. Appellant entered the
home without permission after sexually assaulting Rachel. He threatened to kill the family and
pulled Victor outside where he beat him with his hands and kicked him with his feet. Appellant
threatened Lorenza again as he fled the scene. The jury could have also inferred that Appellant made
the threats in response to Lorenza’s and Victor’s plans to report the crime.  
            Viewing the evidence in a light mist favorable to the verdict, we conclude that a rational jury
could have found Appellant guilty of retaliation. A neutral view of the evidence shows the proof of
guilt is not so obviously weak as to undermine confidence in the jury’s conviction. Having found
the evidence to be both legally and factually sufficient, we overrule both points of error and affirm
the judgment of the trial court.

August 4, 2005                                                            
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)