

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00207-CR

**DAVID RAY SNEED,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 52nd District Court
Coryell County, Texas
Trial Court No. Fam 13-21634**

## MEMORANDUM OPINION

The jury convicted David Ray Sneed of the offense of aggravated assault of a public servant and assessed punishment at fifteen years confinement and a $5,000.00 fine. TEX. PENAL CODE ANN. § 22.02 (b) (2) (B) (West 2011). We affirm.

### Sufficiency of Evidence

In the first issue on appeal, Sneed argues that the evidence is insufficient to support his conviction for the offense of aggravated assault of a public servant. The Court

of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd*, 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can

choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

On February 8, 2014, Sergeant Steve Sands, with the Coryell County Sheriff's Department, went to Sneed's home to serve a felony arrest warrant on Sneed. Sergeant Sands was driving his marked patrol unit and was dressed in his uniform. When he arrived at Sneed's residence, there was a locked gate on the front of the property. Behind the locked gate, there was a parked truck with its flashing lights activated. Sergeant Sands made contact with Sneed, and Sneed quickly approached the gate telling Sergeant Sands to "get the f - - k out of here." Sergeant Sands told Sneed that he saw the lights flashing and wanted to make sure he was ok. Sneed responded that he was fine and again told Sergeant Sands to "get the f - - k out of here." Sergeant Sands left Sneed's residence to avoid a confrontation at that time. He drove to a county road and called for backup.

Sergeant Sands met with Sergeant Ronald Schmidt and deputies Randal Hall and Ron Morgan to develop a plan of action. They decided that Sergeant Schmidt would drive by Sneed's house to determine Sneed's location. Sergeant Schmidt was in his county vehicle, an unmarked black Dodge pickup. Sergeant Schmidt testified at trial that he saw Sneed leave his house carrying a long gun and walk at an "aggressive pace" toward Sneed's pickup. Sergeant Schmidt stayed outside of Sneed's property to see if he left, and the other deputies set up a perimeter around the area so that they could stop Sneed if he left in his vehicle. Sergeant Schmidt testified that he heard Sneed yell, "you f - - king pigs, I see you sitting down there. I told you to leave." Sergeant Schmidt then

heard several shots fired. He testified that he knew the shots were fired in his direction because he could see the muzzle flashes that looked like a small ball. Texas Ranger Jason Bobo testified at trial and further explained that a person looking in the direction of the gun would see a round muzzle flash while a person looking to the side of the gun would see a delineation or more of a line type muzzle flash.

A person commits the offense of aggravated assault if the person commits assault as defined in Section 22.01 of the Penal Code and the person uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.01 (a) (2) (West 2011). The offense is a felony of the first degree if the offense is committed:

> (B) against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant

TEX. PENAL CODE ANN. § 22.02 (b) (2) (B) (West 2011). Sneed argues that the evidence is insufficient to show that he knew of Sergeant Schmidt's status as a peace officer or that he knew he was discharging an official duty.

Sergeant Sands went to Sneed's residence in a marked patrol unit and dressed in uniform to serve a felony warrant. He left the premises after Sneed became confrontational. The record indicates that Sneed saw Sergeant Sands dressed in uniform. Later that evening, the four sheriff deputies were in the area around Sneed's home to serve the warrant. Sergeant Schmidt was outside the gate of Sneed's property where Sergeant Sands was located earlier that day during the confrontation with Sneed. Sergeant Schmidt heard Sneed yell, "you f - - king pigs, I see you sitting down there. I

told you to leave." Sergeant Schmidt testified that "pig" is a common derogatory word for police officers. Sneed then fired shots at Sergeant Schmidt.

The jury could have drawn the inference that Sneed knew Sergeant Schmidt was a public servant. *See Lucio v. State*, 351 S.W.3d 878, 894 (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781) (stating that sufficiency standard " 'gives full play to the responsibility of the trier of fact fairly ... to draw reasonable inferences from basic facts to ultimate facts.' "). Viewing the evidence in the light most favorable to the verdict, we therefore conclude that the evidence was sufficient to prove that Sneed knew he was assaulting a public servant.

Sneed next contends that the evidence is insufficient to establish that he knew Sergeant Schmidt was discharging an official duty. Sneed concedes that the record reflects evidence of the official duties of law enforcement officers; however, he contends that there is no evidence he knew that Sergeant Schmidt was executing those official duties at that time. To prove either capital murder or aggravated assault of a peace officer, the State must show that the peace officer is "acting in the lawful discharge of an official duty," but the defendant need not know that specific fact. *See Mays v. State*, 318 S.W.3d 368,383-384 (Tex. Crim. App. 2010). The State must prove the defendant knew that he was assaulting a peace officer; however, proof that he also knew the officer was "lawfully discharging an official duty" is unnecessary. *Salazar v. State*, 643 S.W.2d 953, 956 (Tex. Crim. App. 1983). The evidence is sufficient to support a finding that the deputies were discharging an official duty. We overrule the first issue.

In the second issue, Sneed argues that the trial court erred in charging the jury.

Appellate review of alleged jury-charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, the court must determine whether error actually exists in the charge. If error is found, the court must then evaluate whether sufficient harm resulted from the error to require reversal. *Id*. at 731-32.

Sneed complains that the inclusion of the theory of transferred intent in the jury charge unlawfully enlarged the theory of conviction. The jury was instructed on the law of transferred intent as follows:

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired contemplated or risked is that a different person or property was injured, harmed, or otherwise affected.

The jury was then instructed in the application paragraph as follows:

> Now bearing in mind the following instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, David Ray Sneed, on or about the 8th day of February, 2013, in the County of Coryell, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly threaten Ronald Schmidt with imminent bodily injury by discharging a firearm in the direction of Ronald Schmidt, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the Defendant did then and there know that the said Ronald Schmidt was then and there a public servant, to-wit: a deputy for the Coryell County Sheriff's Office, and that the said Ronald Schmidt was then and there lawfully discharging an official duty, to-wit: responding to assist in the execution of an outstanding warrant, then you will find the defendant guilty of the offense of aggravated assault on a public servant with a deadly weapon.
> OR
> Still bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, David Ray Sneed, on or about the 8th day of February, 2013, in the County of Coryell,

and State of Texas, as alleged in the indictment, that the defendant while intending to threaten Steve Sands by discharging a firearm in the direction of Steve Sands, and while then and there using or threatening to use a deadly weapon to-wit: a firearm, during the commission of said assault, and while knowing that Steve Sands was then and there a public servant, to-wit: a deputy for the Coryell County Sheriff's Office and while Steve Sands was then and there lawfully discharging an official duty, to-wit: attempting to execute an outstanding warrant, did then and there threaten Ronald Schmidt with imminent bodily injury by discharging a firearm in the direction of Ronald Schmidt, then you will find the defendant guilty of the offense of aggravated assault on a public servant with a deadly weapon.

The statutory principle of transferred intent is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person. *Manrique v. State*, 994 S.W.2d 640, 647 (Tex. Crim. App. 1999); *Delacerda v. State*, 425 S.W.3d 367, 397 (Tex.App.-Houston [1 Dist.] 2011, pet. ref'd). There is evidence that Sergeant Sands, dressed in uniform, approached Sneed at the gate of his property, and Sneed confronted Sergeant Sands and told him to leave. Later that night, Sergeant Schmidt was in the same area where Sergeant Sands previously encountered Sneed. Sergeant Schmidt heard Sneed yell, "you f - - king pigs, I see you sitting down there. I told you to leave." Sergeant Schmidt then saw Sneed fire shots in his direction. We find that the trial court did not err in instructing the jury on the theory of transferred intent. There is evidence that Sneed threatened Sergeant Schmidt with imminent bodily injury by discharging a firearm in the direction of Sergeant Schmidt while intending to threaten Sergeant Sands by discharging a firearm in the direction of Steve Sands. We overrule the second issue.

### Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed May 7, 2015
Do not publish
[CR25]

