

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00204-CR

_____

CLAYTON DEAN SIMMONS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2018-0238

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

After a jury found Clayton Dean Simmons (Simmons) guilty of theft of $100.00 or more, but less than $500.00, it assessed his punishment as ninety days' confinement in jail, but recommended the trial court place him on community supervision. On appeal, Simmons contends the evidence is legally insufficient to support the jury's verdict of guilt. We affirm the trial court's judgment.

## I.  Background

Johnny Ray Floyd, the safety coordinator for MICA Enterprises (MICA), testified that, in January 2018, there was a "break-in" at MICA. Floyd stated that someone had loaded a company truck with "job boxes" and "assorted tools." He continued, "[T]hey even broke into our office and a laptop and some deer heads, some mounts on the wall [were] missing." Both the truck and the property in it were stolen.

The day after the break-in, Floyd conducted an inventory of the company's property to determine if additional items had been taken. Floyd discovered that some batteries and a first-aid kit were missing. Floyd identified the serial numbers on the missing batteries and provided that information to the police. Floyd described the first-aid kit as "a 25 miner first aid kit" that was about four feet long. As new, the kit was valued at $1,495.00. Floyd stated that no one at the company had given their consent for the batteries or the first-aid kit to be taken. Floyd also testified that he did not know Simmons, but that Simmons' cousin, Denver Simmons (Denver), had been employed with MICA until sometime in 2014. According to Floyd, Denver did not have consent

to be on the company's property, and the company had not contracted with Denver to do any additional work after his departure in 2014.

A few days after the break-in, a vehicle matching the description of the stolen MICA truck was seen pulling into Simmons' driveway. Floyd Duncan, captain of the Harrison County Sheriff's Office (HSCO) Criminal Investigative Division, testified that he dispatched HCSO Deputy Sergeant Riyadh Alsadi to Simmons' residence. Alsadi confirmed that the vehicle at Simmons' residence was the stolen MICA truck. Alsadi took Denver into custody and recovered the stolen truck, but when escorting Denver to the patrol car, Denver escaped.

On January 25, 2018, Alsadi was patrolling the area around Simmons' property, searching for Denver. As Alsadi drove past Simmons' property, he observed an unfamiliar vehicle. Alsadi "ran the plates" of the unknown vehicle, and they "came back as stolen."[1] Alsadi exited his patrol car, peered inside the vehicle, and noticed a "gun . . . and some batteries through the back window." Believing the batteries belonged to MICA, Alsadi contacted his supervising officer and requested "backup" at the scene. After additional officers arrived, Simmons, along with Lopez, emerged from the residence.

Duncan testified that he arrived at the scene that day and that the officers discovered that Simmons had placed the batteries in Lopez' vehicle. Floyd later matched the serial numbers on the batteries in Lopez' vehicle to the ones stolen from MICA. Officers also found the first-aid kit on the tailgate of Simmons' truck.

---

[1]It was later determined that the vehicle belonged to Simmons' girlfriend, Jennifer Lopez. Ultimately, it was determined that the vehicle was not stolen, but that Lopez had not obtained a proper set of license tags after reporting that the tags had been stolen.

According to Duncan, "[Simmons] said that he had believed that Denver stole that truck, and property - - other property and brought it to his house." Duncan further testified that the first-aid kit matched the description that Floyd had given him, "except for the stretcher and couple of blankets" were missing. In addition, Duncan observed that the first-aid kit's lid had been painted white and that white paint was found inside Simmons' truck.

Duncan testified that the officers asked Simmons about the batteries in Lopez' vehicle and that Simmons initially stated that the "batteries [were] out of his truck." Simmons testified at trial, "I was asked whose batteries those were and I just considered them mine. I didn't - - had no clue about anything being stolen or didn't have a reason to believe [they were stolen]." Simmons later testified that Denver had given him the batteries in early November. Simmons said he initially placed the batteries in his truck, but then moved them to Lopez' vehicle.

At trial, Simmons described himself as a hoarder, stating, "[I]f it is something useable, I hold onto it." Simmons denied knowing about other items that had been stolen in the area, including a "wood splitter" and a "rock crusher." Simmons stated, "[A]gain, was - - wasn't me. This was my cousin's thing, Denver Simmons."

Simmons also testified that he did not know the first-aid kit was on his property until officers came to arrest Denver about six days earlier. When asked if he was aware that MICA owned the batteries and the first-aid kit, Simmons answered, "I didn't know - - I didn't until - - I guess I assumed because when a MICA truck pulled into our driveway." Simmons denied telling his mother that he knew the batteries were stolen days before his arrest, stating, "If she told - - if she told you that, she's confused." However, Simmons conceded that he knew Denver had a

4

"reputation" and that he knew Denver had been convicted of several crimes. Simmons also admitted that he accepted property from Denver despite knowing his reputation, but explained, "I know people think a lot worse of him than what he is."

Simmons' mother, Gail Simmons (Gail), testified that Simmons had been living in a workshop on her property since 2007. Gail explained that she lived on the property as well and that the HCSO had been harassing Simmons. Gail recalled the events surrounding Denver's escape from the police.

Gail also testified that Simmons knew that Denver had committed theft. Gail said she was unaware of the stolen batteries on her property, but she admitted knowing that the stolen first-aid kit was on the property. Gail explained, "Well, any time I walked out to the shop, I could see it. . . . I asked [Simmons] what it was and he told me it was - - it came out of that truck and [the officers] were supposed to have taken it when they took the truck [on January 19]." She continued, "They hauled the truck out, but they left the box." According to Gail, on January 19, Simmons reported to the officers that the first-aid kit had been stolen. Gail said that Simmons did not have a reputation of being a thief and that he did not have a criminal history.

## II. Standard of Review

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found, beyond a reasonable doubt, that Simmons was guilty of theft. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing

5

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

In drawing inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony, and may "believe all of a witness[]' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established

by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). We consider all the evidence admitted at trial, even improperly admitted evidence. *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

## III.  Discussion

Simmons argues there was legally insufficient evidence to support the jury's determination that he unlawfully appropriated the batteries and the first-aid kit.[2]  Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

To obtain a guilty verdict under Section 31.03, the State had to prove beyond a reasonable doubt that Simmons "unlawfully appropriate[d] property with [the] intent to deprive [MICA] of property." TEX. PENAL CODE ANN. § 31.03(a) (West 2019). "Appropriate" means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (West 2019). To be unlawful, Simmons' appropriation had to have been without the effective consent of the owner. *See* TEX. PENAL CODE ANN. § 31.03(b)(1) (West 2019). Theft

---

[2]Simmons presents his contentions as two separate points of error. Because both of his arguments are based on sufficiency issues, we will address them as one point of error.

is a class B misdemeanor if the value of the property exceeds $100.00, but is less than $750.00. TEX. PENAL CODE ANN. § 31.03(e)(2)(A) (West 2019).

Specifically, Simmons contends the evidence showed that he received the items from Denver, but that he did not know they had been stolen. "Normally, recent, unexplained possession of stolen property is a sufficient circumstance, in and of itself, to convict the possessor of stolen property of the theft of the property." *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). Yet, "before such rule of law may be invoked by the State, it must establish all of the elements of the rule, namely, it must establish that such possession was personal, recent, unexplained, and involved a distinct and conscious assertion of the property by the defendant." *Id*.

In *Hardesty*, the Texas Court of Criminal Appeals explained,

First, if the evidence shows that the defendant was found in possession of recently stolen property, and no reasonable explanation is offered at the time of arrest, the fact[-]finder is not forced to convict the defendant, the burden of proof is not shifted, and the State must still prove each element of the crime beyond a reasonable doubt.

Second, the deduction of guilt drawn from a defendant's recent and unexplained possession of stolen property is merely a circumstance of guilt and is not conclusive. Once the permissible inference arises, the sufficiency of the evidence must still be examined according to applicable direct or circumstantial evidence standards of appellate review since the inference is not conclusive.

*Hardesty v. State*, 656 S.W.2d 73, 77 (Tex. Crim. App. 1983) (citations omitted). If a defendant offers an explanation for his possession of the stolen property, the record must demonstrate the account is false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation for possession of recently stolen property is true or reasonable

8

is a question of fact to be resolved by the trier of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.).

Here, the evidence demonstrated that Simmons was in possession of batteries and a first-aid kit belonging to MICA. Floyd testified that MICA had not given Simmons' consent to exercise control over the property. While Simmons claimed only that he did not know the items were stolen, whether his explanation was reasonable was an issue to be determined by the trier of fact. "The falsity of the explanation may be shown by circumstantial evidence." *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977).

Simmons was also aware of Denver's history of committing theft. Shortly after telling the officers that the stolen batteries came out of his own truck, Simmons admitted that he had received the batteries from Denver, but he gave no explanation as to how Denver came into possession of them. In addition, Simmons' mother testified that Simmons admitted that the property was stolen. While Simmons claimed that his mother was confused, the jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Thomas*, 444 S.W.3d at 10. Accordingly, the jury was free to reject Simmons' testimony and believe Gail's testimony.

Moreover, according to Duncan, Simmons told him that he believed Denver stole MICA's truck and other property and then brought it to Simmons' house. The evidence also showed that the first-aid kit had been painted with white paint, and white paint was found in Simmons' vehicle. It was reasonable for the jury to infer that Simmons intended to prevent the identification of the stolen first-aid kit by modifying its appearance. Based on the evidence in the record, the jury could

9

have found Simmons' claim—that he did not know the property was stolen—to be false or unreasonable.

We therefore conclude that a rational jury could have found beyond a reasonable doubt that Simmons "acquire[d] or otherwise exercise[d] control" over MICA's batteries and first-aid kit without its consent and with the intent to deprive MICA of its property. *See* TEX. PENAL CODE ANN. § 31.01(4)(B) (West 2019).

We overrule Simmons' sole point of error.

## IV.  Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     March 28, 2019
Date Decided:       April 12, 2019

Do Not Publish

10