

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00177-CR

---

SCOTT LOGAN BIGGS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2018F00049

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

After a jury found Scott Logan Biggs guilty of bail jumping and failure to appear, it assessed his punishment as ten years' confinement in prison and a $10,000.00 fine. On appeal, Biggs argues (1) that the trial court erred when it admitted copies of screenshots of cellular telephone messages into evidence without sufficient authentication and (2) that the evidence was insufficient to support a finding that Biggs had been previously charged with a felony. For the reasons below, we affirm the trial court's judgment.

## I. Background

On December 23, 2015, Biggs was indicted for the offense of family violence assault by occlusion, which is a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2) (West 2019). The State's indictment alleged that, on or about October 5, 2015,

> SCOTT LOGAN BIGGS did then and there intentionally, knowingly or recklessly cause bodily injury to Geneva Massingale, a member of the defendant's family, as described by 71.003 of the Texas Family Code, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the said Geneva Massingale by applying pressure to the throat or neck of the said Geneva Massingale.

Following his arrest, Biggs procured a surety bond from 2 Blondes Bail Bonds and agreed to appear in court "as [he] may be directed." The bail bond agreement was signed by Biggs, as well as Debbie Hale, one of the co-owners of the bond company. The document showed that the bond was in the amount of $2,500.00 and that the charge against Biggs was a misdemeanor, not a third-degree felony.

On December 31, 2015, the trial court issued a notice of hearing, requiring Biggs to appear in court on January 19, 2016. On January 7, 2016, 2 Blondes Bail Bonds sent a text message to

2

Biggs stating, "Scott you have your first court hearing on Jan 19th in the County Court at Law courtroom in Linden.  The court house is the metal bldg there by the jail.  Please confirm you received this."  Biggs responded, "Confirmed already got notice in mail thanx."  2 Blondes Bail Bonds warned Biggs, "Ok good.  Just wanting to make sure because these Judges have no mercy if someone fails to show now regardless of the reason[.]  The[y] issue bail jump charges and double the bond or no bond at all."

On January 18, 2016, 2 Blondes Bail Bonds sent a reminder to Biggs that he was required to appear in court the next day, January 19.  The text message read, "Don't forget your court hearing is tmr at 9:00 County Court @ Law Hwy 8 Linden right next to the jail.  First bldg past the correction facility."  Biggs responded, "Ok."  2 Blondes Bail Bonds asked, "Will you be there?"  Biggs replied, "Of course[.]"  Despite the reminders and warnings, Biggs did not appear in court on January 19.  Almost two years later, the State indicted Biggs for the offense of felony bail jumping and failure to appear.  *See* TEX. PENAL CODE ANN. § 38.10 (West 2016).

## II.    Discussion

### A.    Sufficient Authentication

Biggs contends the trial court erred when it admitted into evidence the alleged text messages between Biggs and 2 Blondes Bail Bonds because they were not sufficiently authenticated.  We review for an abuse of discretion a trial court's decision to admit or exclude evidence.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree."  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  We may not

3

substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

"The requirement of authentication or identification is a condition precedent to admissibility . . . ." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (quoting TEX. R. EVID. 901(a)). "[T]ext messages may be authenticated by 'evidence sufficient to support a finding that the matter [in question] is what its proponent claims.'" *Id.* at 600–01 (quoting TEX. R. EVID. 901(a)). "In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims." *Id.* at 600. Thus, "the trial court need only make the preliminary determination that the proponent of the item has supplied the facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Id.* "In performing its Rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (referencing Rule 104 of the Texas Rules of Evidence). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.*

Authentication of a text message "can be accomplished in myriad ways, depending on the unique facts and circumstances of each case, including through the testimony of a witness with knowledge[,] . . . through evidence showing distinctive characteristics," *Butler*, 459 S.W.3d at 601, or "by comparison with other authenticated evidence," *Tienda*, 358 S.W.3d at 638. A witness may have knowledge of the authorship of a text message if the witness was "the actual author of the

4

text message." *Butler*, 459 S.W.3d at 601. While association of a cell phone number or a Facebook account with a particular individual alone "might be too tenuous," other evidence, such as the text "message's 'appearance, contents, substance, internal patterns, or other distinctive characteristics,'" can support a conclusion that the message was sent by a particular author. *Id*. at 601–02 (quoting TEX. R. EVID. 901(b)(1)).

During the preliminary hearing, Joni Jones, the other co-owner of 2 Blondes Bail Bonds, testified that she was a custodian of the business records for the company. Jones stated that the screenshots of the text message exchange with Biggs had been retained in his file as was the usual procedure for the business. Jones verified that the telephone number shown at the top of the screenshot was the number Biggs had provided to the company. According to Jones, the copies of the screenshots were true and accurate representations of the text messages.[1] The text messages were comprised of two conversations[2] and referred to "Scott['s] "first court hearing," the date the hearing was to take place, the time of the hearing, the place of the hearing, a description of the building, and the fact that, if Biggs did not appear in court, he would face serious consequences.

---

[1]Biggs complains that Jones was not the individual who messaged him, but that the creator and sender of the text messages from 2 Blondes Bail Bonds had been Hale. The Texas Rules of Evidence allow the admission of records kept in the course of regularly conducted business activities. TEX. R. EVID. 803(6). To be properly admitted under this Rule, the proponent must prove that the document was made at or near the time of the events recorded, from information transmitted by a person with knowledge of the events, and made or kept in the course of a regularly conducted business activity, unless "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id*. The business record witness does not have to be the record's creator or have personal knowledge of the contents of the record. *Brooks v. State*, 901 S.W.2d 742, 746 (Tex. App.—Fort Worth 1995, pet. ref'd). The witness is only required to have personal knowledge of the manner in which the records were prepared. *Id*. Although Jones was not the creator of the records, her testimony met the requirements of Rule 803, and there was no evidence to show "the source of information or the method or circumstances of preparation" relating to the messages lacked trustworthiness.

[2]The first text message was dated January 7, 2016. The second text message was sent on January 18, 2016, which was the day before the scheduled hearing.

Biggs responded to the text messages by confirming that he had received notice to appear in court and with his assurance that he would be there on the designated day and time.

Biggs maintains, however, that alterations had been made to the original evidence and, thus, the text messages should not have been admitted. He points to Jones' testimony that just days prior to the commencement of trial, she deleted Biggs' name that appeared at the top of the phone's screen so "the phone number would show up instead of the name." Yet, Jones also testified that the telephone number on the screen was the number Biggs had provided the company and that the content of the text messages had not been altered. There was no evidence presented to the contrary.

Biggs also maintains that, because the physical cell phone used by 2 Blondes Bail Bonds was not provided at trial, the trial court erred when it admitted copies of the screenshots of the text messages because the best evidence had not been produced. "An original writing, recording, or photograph is required in order to prove its content." TEX. R. EVID. 1002. Regarding "electronically stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information." TEX. R. EVID 1001(d). In this case, copies of the cell phone screenshots of the conversation between the parties were admitted. Jones testified that the printouts of the text messages accurately reflected the information contained on the cell phone. Again, there was no evidence presented to the contrary.

Based on the evidence presented in the preliminary hearing, the trial court determined that the State "ha[d] supplied facts that [were] sufficient to support a reasonable jury determination that the evidence [it] ha[d] proffered [wa]s authentic." *See Tienda*, 358 S.W.3d at 638. We agree.

6

Accordingly, we find that the trial court did not err when it admitted the screenshots of the text messages into evidence.

We overrule Biggs' first point of error.

**B.      Sufficiency of the Evidence**

A person commits the offense of bail jumping if he has been "lawfully released from custody, with or without bail, on condition that he subsequently appear" and then "intentionally or knowingly fails to appear in accordance with the terms of his release."  TEX. PENAL CODE ANN. § 38.10(a).[3]  "It is a defense to prosecution" for bail jumping "that the actor had a reasonable excuse for his failure to appear in accordance with the terms of his release."  TEX. PENAL CODE ANN. § 38.10(c).  If the underlying offense for which the accused failed to appear is classified as any degree of felony offense, then the new charge is a third-degree felony.  TEX. PENAL CODE ANN. § 38.10(f).  Otherwise, the new charge is a misdemeanor punishable by a fine only.  TEX. PENAL CODE ANN. § 38.10(e).

Here, Biggs contends that the State failed to present sufficient evidence to show that the underlying charge against him was a felony offense.  In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt.  *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex.

_____

[3]The indictment against Biggs stated that, on or about January 19, 2016, he "did then and there after being lawfully released from custody on *a pending felony charge* on condition that he subsequently appear in court, intentionally and knowingly fail to appear in accordance with the terms of his release."  (Emphasis added).

7

App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

In drawing inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life."  *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. denied) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)).  The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony, and may "believe all of a witness[]' testimony, portions of it, or none of it."  *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014).  We give "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility."  *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In support of his position that the State failed to prove the underlying offense was a felony, Biggs directs us to the contents of the bond agreement.  First, the bond agreement identifies the offense charged as either a "felony" or "misdemeanor."  On the bond agreement in this case, the word "misdemeanor" was circled.  However, at trial, Jones pointed out that the bond stated Biggs had been charged with "assault family violence, impeding breath," which Jones explained was a felony offense.

8

Next, Biggs points out that the bond amount was $2,500.00, which is an amount consistent with a misdemeanor rather than a felony offense. At trial, however, Jones explained that Biggs' bond had been in the amount of $25,000.00, not $2,500.00. She pointed to the "Oath of Sureties" in the bond agreement, which stated,

> Each of the undersigned swears that he is worth, in his own right, the sum set opposite his signature, after deducting from his property all that which is exempted by law and the Constitution of said State from forced sale, and after the payment of all debts of every description, whether individual or secured debts, and after satisfying debts, and after satisfying all encumbrances upon his property which are known to him; that he resides in the county of CASS and has property in this State liable to execution, worth the said sum or more
> the said <u>2 Blondes Bail Bonds</u>, the sum of <u>Fifty –</u> Thousand dollars.[4]

Jones then explained, "If a bond is [$]25,000, then we have to sign the bond saying that we're responsible for $50,000. We always have to double the amount of the bond." Thus, according to Jones, because the bondsman's total responsibility was $50,000.00, then the amount of the bond was half that amount, or $25,000.00. She testified that the language in the bond agreement stating otherwise was simply a typographical error.

The State also admitted into evidence the December 23, 2015, indictment against Biggs for the underlying charge. The indictment showed that Biggs had been charged with family violence assault by occlusion causing bodily injury. The indictment also referenced the statute upon which the charge was based. Most notably, the indictment clearly showed that the specific charge was a third-degree felony.

In addition, a copy of the court's January 19, 2016, docket was admitted into evidence. The docket showed that Biggs had been scheduled to appear for arraignment on the charge of

---

[4]The oath was signed by Jones' mother, Debbie Hale.

"ASSAULT FAM/HOUSE MEM IMPEDE BREATH/CIRULAT – F3." The docket also showed that the date of that particular offense was October 5, 2015, and that, when the court called Biggs' case, he did not respond. It was reasonable for the jury to infer that "F3" referred to a third-degree felony and that Biggs did not make an appearance on the date on which he was scheduled to do so.

The Texas Court of Criminal Appeals has explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Moreover, if the record contains conflicting evidence, we must presume that the fact-finder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326. The evidence in this case was sufficient to find, beyond a reasonable doubt, that the underlying charge against Biggs amounted to a felony offense.

Accordingly, we overrule Biggs' second point of error.

## III.  Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    April 12, 2019
Date Decided:      May 8, 2019

Do Not Publish

10