

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00042-CR

ROBERT BRYAN FINCH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 27636

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# M E M O R A N D U M   O P I N I O N

Allison Finch (Allison) accused her husband, Robert Bryan Finch (Finch), of repeatedly beating her on the afternoon of October 1, 2017. Finch was charged with family violence assault, with a prior family violence assault conviction.[1] Although Allison recanted her accusations against him at trial, a Lamar County jury convicted Finch and, after finding that a sentence-enhancement paragraph was true, assessed him fifteen years' imprisonment. In this appeal, Finch challenges the sufficiency of the evidence showing he had a prior family violence assault conviction, and the sufficiency of the evidence supporting the jury's finding that he assaulted Allison. Because we find that (1) Finch cannot challenge the sufficiency of the evidence supporting his prior conviction and (2) sufficient evidence supported the jury's finding that Finch assaulted Allison, we affirm the trial court's judgment.

*(1)     Finch Cannot Challenge the Sufficiency Supporting the Evidence of His Prior Conviction*

Finch claims there was no evidence that he had previously been convicted of family violence. He acknowledges that he pled true to the allegation in the indictment that

> before the commission of the charged offense, the Defendant had previously been convicted of an offense against a member of the Defendant's family or household or a person with whom the Defendant has or has had a dating relationship, to-wit: on or about October 20, 2006[,] in the 6th District Court of Lamar County, Texas, in cause number 21640.

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A) (upgrading a family violence assault offense to a third-degree felony when the defendant has been previously convicted of family violence assault).

Nevertheless, Finch analogizes his plea of true to a guilty plea[2] and argues that the State was required, yet failed, to submit additional evidence of the prior conviction at trial. We disagree.

As relevant to this case, Section 22.01 provides:

(a)     A person commits an offense if the person:

(1)     intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

. . . .

(b)     An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

. . . .

(2)     a person whose relationship to or association with the defendant is described by Section 71.0021(b) [defining "dating relationship"], 71.003 [defining "family"], or 71.005 [defining "household"], Family Code, if:

(A)     it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, . . . . against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code;

TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A). Thus, when the assault occurs against a member of the defendant's family or household, or against a person with whom the defendant has, or has had, a dating relationship,[3] and it is shown that the defendant has previously been convicted of family violence assault, the degree of the offense is elevated from a Class A misdemeanor to a third-degree felony. We have previously recognized that proof of a prior family violence

---

[2]Finch pled not guilty to the offense.

[3]In this opinion, we refer to an assault described under Section 22.01(b)(2) as a "family violence assault."

3

conviction is an element of this elevated offense. *See Sheppard v. State*, 5 S.W.3d 338, 340 (Tex. App.—Texarkana 1999, no pet.). When a prior conviction elevates the degree of the offense from a misdemeanor to a felony, the prior conviction is referred to as "jurisdictional." *See Oliva v. State*, 548 S.W.3d 518, 528 (Tex. Crim. App. 2018).

In *Woods v. State*, Woods was charged with felony driving while intoxicated (DWI) and entered a plea of true to two jurisdictional prior DWI convictions, which convictions elevated the offense from a misdemeanor to a felony.[4] *Woods v. State*, 398 S.W.3d 396, 399 (Tex. App.—Texarkana 2013, pet. ref'd). On appeal, Woods challenged the sufficiency of the evidence showing the existence of one of the two prior DWI convictions. *Id.* We agreed that the prior DWI convictions were elements of the offense that must be proven beyond a reasonable doubt. *Id.* However, based on Texas Court of Criminal Appeals precedent, we held that his plea of true to the prior convictions had waived his "right to put the government to its proof of that element" and that he was precluded from challenging the sufficiency of the evidence supporting that element on appeal. *Id.* at 400 (quoting *Bryant v. State*, 187 S.W.3d 397, 402 (Tex. Crim. App. 2005)).

In *Bryant*, the Texas Court of Criminal Appeals explained that a defendant's stipulation to evidence against him or her "is a kind of judicial admission." *Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005). It also quoted, with approval, the following statement from Wigmore:

> A fact that is judicially admitted needs no evidence from the party benefitting by the admission . . . . An express waiver, made in court or prepatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. . . . It is, in truth, a substitute for evidence,

---

[4]*See* TEX. PENAL CODE ANN. § 49.09(b)(2) (Supp.).

in that it does away with the need for evidence.

*Id.* (quoting 9 *Wigmore on Evidence* §§ 2588, 2591 (3d ed. 1940) (emphasis deleted)). Consequently, such a judicial admission regarding prior convictions "remove[s] the need for proof of those convictions," and precludes the defendant from complaining on appeal that the State failed to prove this element of the offense. *Id.* at 402.

Like the defendant in *Woods*, Finch pled true to the allegations in the indictment that he had previously been convicted of family violence assault on a date that preceded the date of the current offense. This judicial admission removed the need for the State to provide additional proof of this conviction and waived Finch's right to complain that the State failed to prove the prior conviction. *See id*. at 401–02; *Woods*, 398 S.W.3d at 400. Therefore, Finch is precluded from asserting this complaint on appeal. We overrule this issue.

*(2)     Sufficient Evidence Supports the Finding that Finch Assaulted Allison*

Finch also challenges the sufficiency of the evidence that he was the person who assaulted Allison.[5] Although he acknowledges that Allison identified Finch as her attacker to police officers and healthcare workers on the day of the assault and to the investigating officer two days later, he argues that the jury was bound by Allison's trial testimony, which he characterizes as a clear and unequivocal recantation of her prior allegations that Finch was her attacker.

In our evaluation of legal sufficiency, all the evidence is reviewed in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the

---

[5]Finch does not contest the sufficiency of the evidence that Allison suffered bodily injury from being hit and punched in the head, that bodily injury was caused intentionally or knowingly, or that she was a member of Finch's family or household at the time of the assault. Nevertheless, in our review of the evidence, we have determined that legally sufficient evidence supported these elements of the offense.

essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency of the evidence as directed by the *Brooks* opinion, and we give deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). When the jury's decision is based on an evaluation of credibility, we give its decision almost complete deference. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating

6

circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Except for the previously addressed prior conviction, here Finch challenges only the sufficiency of the evidence to establish that he assaulted Allison.

At trial, William Hindman, a friend of Finch and Allison, testified that, on the day of the assault, Finch came to his house upset about being left somewhere and wanted to contact Allison. After Finch called her, Allison came over. They started arguing. Finch wanted Allison to come with him, so he put his arm around her neck. Hindman told Finch that a neighbor had called the police; Finch told him that they were leaving, held Allison in a head lock, and left. Hindman also testified that Finch was mad and upset.

Later that day, Allison came into the Dollar General store crying and upset. She told the manager she needed help, and the manager put in her a bathroom and called 9-1-1. The store manager described Allison as scared and crying. The 9-1-1 operator who received Allison's call

7

testified that the caller was terrified and out of breath and whispered throughout the call. On the recording of the 9-1-1 call, Allison sounded scared and repeatedly asked the operator to send help quickly, because she was afraid that Finch would come in, find her, and kill her.

Rafael Ramirez, a Paris Police Department (PPD) officer, responded to the 9-1-1 call. He described Allison as frantic, crying, scared, and adamant. He described the marks and bruises on her forehead and a knot on the left side of her head, and photographs of her injuries were admitted into evidence.

Allison admitted telling Ramirez that the assault began at Hindman's house, that Finch had punched her in the head over and over, and that Finch had slammed her head into the window. She also admitted telling Ramirez that Finch had choked her and threatened to kill her, that he was violent and angry while choking her, and that she could not breathe or talk at the time. Allison admitted that she had told the staff at Paris Regional Medical Center, where she had been taken for treatment, the same things she told Ramirez and that she identified Finch as her attacker. Her account to the hospital staff was also contained in the hospital's records, which were admitted into evidence.

Two days after the assault, Allison was interviewed by Ronnica Blake, a detective for the PPD. She admitted telling Blake that she was still afraid of Finch and that Finch had hit her mostly in the head and had bragged that the bruises on her head were not visible. Allison also told Blake that Finch choked her to the point she could not breathe, that he struck her arm and all over her upper body with his fist, and that she still had pain all over her body. Photographs of Allison's injuries taken that day were also admitted into evidence.

8

Nevertheless, on cross-examination, Allison testified that she had been sleep deprived and under the influence of many drugs when she reported these incidents. She testified that the bruises and markings on her body were caused by a girl that she and Finch picked up in Dallas and returned to Paris with the intent of having sex with her. When they got back to Paris, Finch ran off with the drugs, and the girl got mad and beat her up. She claimed that she made up the story about Finch being her attacker because she was mad at him for putting her in that situation.

Although Finch acknowledges that a jury may believe or disbelieve all or part of a witness' testimony and that a jury may disbelieve a witness' recantation, he cites *Saunders v. State* for the proposition that jurors "may not utterly disregard undisputed evidence without a sensible basis for thinking it unreliable any more than they may simply assume a critical part of the proof without evidence having an inclination to confirm it." *Saunders v. State*, 817 S.W.2d 688, 693 (Tex. Crim. App. 1991).

In this case, the verdict indicates that the jury disbelieved Allison's recantation testimony and believed her original allegations that she made on the day of the attack and two days later. Her statements to police officers and healthcare workers were consistent with each other, with her injuries, with her actions and demeanor at Dollar General and the hospital, and with her expressed fear of Finch. Further, Allison testified that she was still married to Finch at the time of trial, and she admitted that she had had several conversations with him in which he had urged her to tell the State that she no longer wanted to prosecute the case and that she needed to figure out how she had come to look the way she did on the day of the attack.

9

Under this record, we find that the jury, "us[ing] common sense and apply[ing] common knowledge, observation, and experience gained in the ordinary affairs of life," had a sensible basis for thinking Allison's recantation testimony was unreliable and for believing her original allegations instead. *See Duren*, 87 S.W.3d at 724. Legally sufficient evidence supports the jury's finding that Finch assaulted Allison. We overrule this issue.

We affirm the judgment of the trial court.


Josh R Morriss, III
Chief Justice

Date Submitted:     August 15, 2019
Date Decided:      August 22, 2019

Do Not Publish